UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GWANDEL B.,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | No. 1:18-cv-03882-MJD-JPH |

**ENTRY ON JUDICIAL REVIEW**

Claimant Gwandel B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382(a)(3)(A). For the reasons set forth below, the Court **REVERSES and REMANDS** the decision of the Commissioner.

## I. Background

Claimant filed an application for DIB and SSI on February 26, 2015, alleging an onset of disability on August 28, 2014. [Dkt. 5-2 at 16.] Claimant alleges disability due to problems with high blood pressure, depression, anxiety, nerve damage in her eyes and feet, and acid reflux.[1]

---

[1] Claimant and the Commissioner recited the relevant factual and medical background in more detail in their briefs. [*See* Dkt. 9 and Dkt. 13.] Because these facts involve Claimant's confidential and otherwise sensitive medical information, the Court will incorporate the factual background in the parties' briefs but will articulate specific facts as needed below.

[Dkt. 9 at 5.] Claimant's claim was initially denied on May 20, 2015, and again on September 1, 2015, upon reconsideration. [Dkt. 5-4 at 2, 14.] Claimant filed a timely written request for a hearing on October 2, 2015. [Dkt. 5-4 at 28.]

A hearing was held on June 13, 2017, before Administrative Law Judge Jody H. Odell ("ALJ"). [Dkt. 5-2 at 33.] The ALJ issued a decision on October 27, 2017, concluding that Claimant was not entitled to receive DIB or SSI. [Dkt. 5-2 at 16-28.] On October 11, 2018, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 5-2 at 2-4.] On December 10, 2018, Claimant filed a timely Complaint with this Court asking the Court to review the denial of benefits according to 42 U.S.C. 405(g) and 42 U.S.C. 1383(c). [*See* Dkt. 1.]

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. p. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity (RFC) by evaluating "all limitations that arise from medically determinable impairments, even those that were not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgement for that of the ALJ, but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into [her] reasoning" to "build an accurate and logical bridge from the evidence to [her]

conclusion," she need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since August 28, 2014, the alleged onset date. [Dkt. 5-2 at 19.] At step two, the ALJ determined that Claimant had severe "obesity, diabetes with neuropathy, depression/anxiety." [Dkt. 5-2 at 19.] While the medical evidence includes a history of other medically determinable impairments, including hypertension, hyperlipidemia, vision issues, and acid reflux, the ALJ found that these impairments did not significantly limit Claimant's ability to perform basic work activities, and therefore classified them as non-severe. [Dkt. 5-2 at 19.] The ALJ properly considered these non-severe impairments when determining Claimant's residual functional capacity. [Dkt. 5-2 at 19.]

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 5-2 at 19.] In making this determination, the ALJ considered Claimant's diabetes under Listing 9.00B5. [Dkt. 5-2 at 19.] While Claimant had abnormal glucose levels during the period at issue, the ALJ found that there was "no evidence of complications from diabetic ketoacidosis treatment, chronic hyperglycemia, or episodes of hypoglycemia. In fact, this condition has improved with treatment during periods of compliance." [Dkt. 5-2 at 19-20.] The ALJ considered Claimant's neuropathy under Listing 11.14. [Dkt. 5-2 at 20.] However, the ALJ found that the evidence "does not show disorganization of motor functions in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." [Dkt. 5-2 at 20.] Next, the

ALJ considered Claimant's obesity, for which there is no listing, but found that Claimant's obesity did not meet or medically equal any of the other listed impairments.

The ALJ then considered Claimant's mental impairments under Listings 12.04 and 12.06. [Dkt. 5-2 at 20.] In concluding that Claimant did not meet the listing requirements, the ALJ considered the "paragraph B" criteria. The ALJ concluded that Claimant had a mild limitation in interacting with others, and no limitation in adapting or managing herself. [Dkt. 5-2 at 20-1.] The ALJ looked to Claimant's own reports of regularly spending time with others and getting along with authority figures, and the fact that she could attend to her own personal care independently. [Dkt. 5-2 at 20-1.]

With regard to Claimant's understanding, remembering, or applying information, the ALJ found Claimant to have a moderate limitation. [Dkt. 5-2 at 20.] While Claimant is generally able to follow instructions, she often has difficulties with her memory and forgets things even after marking them on her calendar. [Dkt. 5-2 at 48.] The ALJ also found moderate limitations with respect to Claimant's concentration, persistence, or pace. [Dkt. 5-2 at 21.] In finding these moderate limitations, the ALJ considered Claimant's own statements of being unable to finish tasks she starts. However, Claimant did not indicate any diminished attention span. [Dkt. 5-2 at 21.] Because the ALJ found that Claimant's mental impairments did not seriously limit her ability to function independently, appropriately, and effectively, the ALJ concluded that Claimant did not satisfy the "paragraph B" criteria. [Dkt. 5-2 at 21.]

The ALJ next analyzed Claimant's residual functioning capacity ("RFC"). The ALJ concluded that Claimant had the capacity to perform light work, except she was:

> [L]imited to simple, routine tasks and simple, work-related decisions; she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; she can frequently perform balancing, stooping, kneeling, crouching,

5

and crawling; she can never be exposed to extreme cold, extreme heat, or humidity; she can never be exposed to moving mechanical parts, unprotected heights or motor vehicle operation; she can frequently handle and finger.

[Dkt. 5-2 at 21-2.]

In finding these limitations, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 5-2 at 22.] The ALJ acknowledged that Claimant's impairments were reasonably expected to cause her symptoms, however, she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Dkt. 5-2 at 23.]

At step four, based on the vocational expert's testimony, the ALJ concluded that Claimant was unable to perform her past relevant work as a bus monitor and janitor. [Dkt. 5-2 at 26.] The ALJ thus proceeded to step five, where, relying on testimony from the vocational expert indicating that someone with Claimant's age, education, work experience, and RFC was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," [Dkt. 5-2 at 27], she concluded that Claimant was not disabled.

## IV. Discussion

Claimant asserts that the ALJ committed three errors that require reversal and remand of the Commissioner's decision for further proceedings.

**A. Limitations in Concentration, Persistence, or Pace**

Claimant contends that the ALJ did not appropriately address her limitations in concentration, persistence, or pace in the hypothetical to the vocational expert. [Dkt. 9 at 15.] The ALJ found Claimant has moderate difficulties with regard to concentration, persistence, or

maintaining pace. [Dkt. 5-2 at 21.] The ALJ stated that the residual functional capacity she found accounted for Claimant's medically determinable impairments by restricting her mental limitations to "simple, routine tasks and simple, work-related decisions." [Dkt. 5-2 at 21.] Claimant correctly notes that the Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks adequately captures limitation in concentration, persistence, and pace." [Dkt. 9 at 15.] *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace.") (quoting *Winsted v. Berryhill*, 923 F.3d 477 (7th Cir. 2019)); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin,* 758 F.3d 850, 858-59 (7th Cir. 2014).

Vocational experts must be given a complete picture of a claimant's residual functional capacity, so they must consider "deficiencies of concentration, persistence, and pace." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). A hypothetical "posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace," and if it is not included, the Seventh Circuit has found that "the ALJ committed reversible error." *Varga,* 794 F.3d at 814. While the ALJ does not have to use the precise terminology of "concentration," "persistence," or "pace," courts will not assume that the VE is apprised of limitations unless he or she has independently reviewed the medical record. *See Varga,* 794 F.3d at 814. There is no indication here that the VE reviewed Claimant's medical history or heard testimony about issues regarding concentration, persistence, or pace. Consequently, the ALJ did not adequately address

7

Claimant's moderate limitations maintaining concentration, persistence, or pace and Claimant's ability to stay on task.

"The government bears the burden of proof at the fifth step and must present evidence establishing that the claimant possesses the residual functional capacity to perform work that exists in a significant quantity in the national economy." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The failure to build an "accurate and logical bridge" between the limitations maintaining concentration, persistence, or pace and the RFC assessment and the hypothetical posed to the VE requires this Court to remand for further proceedings. On remand, the ALJ should fully account for Claimant's ability to stay on task for sustained periods of time in the RFC assessment and in any hypotheticals posed to the vocational expert.

## B. Weight Given to Treating Source Opinion

Claimant next asserts that the ALJ provided "meritless support for giving [her treating physician's opinion] little weight and failed to follow the guidelines set forth by Social Security regarding analysis of treating source statements." [Dkt. 9 at 26.] A treating physician's opinion is generally given more weight than other medical opinions because treating physicians are likely most able to provide a "detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 CFR § 404.1526(c)(2). The treating-physician rule in effect at the time of Claimant's application, 20 CFR § 404.1527(d)(2), "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). However, when the treating source's medical opinion is not given controlling weight, the following factors must be considered in determining the weight to be afforded the opinion: the nature of the treating

8

relationship, length of treating relationship, supportability, consistency, and specialization of the source.  20 CFR § 404.1526(c)(2).

In this case, there are inconsistent medical opinions with regard to Claimant's condition and limitations.  [Dkt. 5-2 at 14.]   Because of the inconsistencies, the treating physician is not automatically given controlling weight; however, the ALJ must consider the above listed factors. The ALJ explained her reasoning for giving the opinion of Dr. Webber, Claimant's treating provider, little weight as follows:

> This checklist-style form appears to have been completed as an accommodation to the claimant and includes conclusions regarding functional limitations with limited rationale for those conclusions.  Moreover, it is unclear if Dr. Webber is familiar with the requirements of the Social Security Administration disability program or the evidence of record.  Therefore, I give this opinion little weight.

[Dkt. 5-2 at 24.]  Upon remand, the ALJ shall take care to address all of the factors outlined in 20 CFR § 404.1526(c)(2), with regard to Dr. Webber's opinion.  The ALJ also shall explain how a treating physician's lack of familiarity with "the Social Security Administration disability program" is relevant to her **medical** opinion about the effects of her patient's medical conditions, as well as what "evidence of record" the ALJ believes Dr. Webber was lacking that would have been more relevant to Dr. Webber's medical opinion that Dr. Webber's own experience treating Claimant.   The ALJ also shall address the EMG results cited by Dr. Webber.

## C.  Consideration of Subjective Symptoms

Claimant asserts that the ALJ erred in her articulation of her application of SSR 16-3p in considering Claimant's subjective symptoms.  [Dkt. 9 at 20.]  The regulations describe a two-step process for evaluating the subjective symptoms caused by a claimant's impairments.  First, the ALJ "must consider whether there is an underlying medically determinable physical or

9

mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, at *3. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . ." *Id.*

Here, the ALJ has adequately described her reasoning for finding Claimant's subjective symptoms to be less severe than Claimant claims. With regard to Claimant's psychiatric and mental limitations, the ALJ cites the fact that a counselor who evaluated her noted the possibility of malingering and the fact that Claimant declined to follow the counselor's recommendation with regard to mental health treatment. [Dkt. 5-2 at 23]; *see* [Dkt. 5-10 at 47.] The ALJ further cited Claimant's noncompliance with her treatment for diabetes and noted that when Claimant was compliant with treatment, it was "relatively effective in relieving symptoms during periods of compliance." [Dkt. 5-2 at 23.] This is an appropriate consideration in assessing a claimant's subjective symptoms. *See* SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure").[3] Accordingly, the Court does not find error in the ALJ's

---

[3] Claimant does not argue that the ALJ erred in not considering the reasons for her non-compliance.

evaluation of Claimant's subjective symptoms under SSR 16-3p. However, the Court notes that if, on remand, the ALJ's assessment of the weight to be given Dr. Webber's opinion changes, that may necessitate a new evaluation of Claimant's subjective symptoms as well.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED.

Dated: 3 SEP 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.